### GULF CASUALTY CO. v. FIELDS.

No. 3563.

Court of Civil Appeals of Texas. El Paso.

June 17, 1937.

Rehearing Denied July 8, 1937.

Peveril O. Settle and R. E. L. Batts, both of Ft. Worth, John E. Green, Jr., of Houston, Whitaker & Perkins, of Midland, and David W. Stephens, of Ft. Worth, for appellant.

W. P. Morrison, of Oklahoma City, Okl., W. F. Nix, of Amarillo, and J. B. Ogden, of Kermit, for appellee.

NEALON, Chief Justice.

This is an appeal from a judgment of the district court of Winkler County, Tex., awarding to appellee the sum of $5,310.43 in a lump sum as workman's compensation on the basis of total and permanent incapacity. For convenience, the appellant will be referred to as defendant, and the appellee as plaintiff.

On February 13, 1936, plaintiff was an employee of the Gulf Refining Company and engaged, along with other workmen, in the work of laying a pipe line from a point in Winkler county, Tex., to a point in the state of New Mexico. Defendant was workmen's compensation insurance carrier for the Gulf Refining Company under the terms of the Texas Workman's Compensation Act (Vernon's Ann.Civ.St. art. 8306 et seq.). Plaintiff claimed that

while he was handling a joint of pipe on said day it was dropped quickly and he was seriously injured. The Industrial Accident Board made an award in his favor, but he was dissatisfied with the award and brought this suit. The injury was received in New Mexico, a short distance from the Texas line. Defendant claimed that plaintiff was working in New Mexico under an oral agreement of hire entered into in that state; that he was, if injured, entitled at the time he received his injuries to compensation under the laws of New Mexico, in which state defendant claimed it did not do business. Plaintiff's employment with the Gulf Refining Company commenced at Wink, Tex. On January 29, 1936, he continued, without intermission, to assist in the work of laying his employer's pipe line from some point in Winkler county towards and across the New Mexico line to the place at which he was injured. He lived at Wink, rode a company truck to and from his work daily, and collected his pay at Wink. From the time that he was employed until the day he received his alleged injury he had over him the same "pushers" and bosses. Defendant's claim that plaintiff was not employed in Texas was based upon testimony of two of employer's employees to the effect that one of them, H. D. Johnson, an assistant timekeeper and checker, on February 12, 1936, went to the location where plaintiff and his fellow employees were working for the purpose of getting these employees to sign their release of their Texas contract. These releases were prepared by his superior, Mr. Berryhill, in the office at Wink. He said, "I told them, in substance, that when they went to work in Texas they signed a Texas contract, and now, since their work in Texas was completed and they were in New Mexico they were required to sign a release from that contract, and I also told them not to return to Texas to do any more work unless they signed a Texas contract."

He further testified that there were about twenty or twenty-five men to be signed up and it took about fifteen or twenty minutes to get them to sign the "releases." The employees were not furnished copies of the papers signed. No explanation was made to plaintiff, or any one else, of any effect the instrument might have upon his right to compensation in the event of injury. Plaintiff denies executing the instrument. The instrument that it was alleged plaintiff signed read as follows:

"This agreement made this 12th day of February, 1936, between Carl Ambros Fields, First Party, and Gulf Refining Company, a Delaware Corporation, Second Party; witnesseth, that

"Whereas, the parties hereto on the 29th day of January, 1936, entered into an agreement which was intended to cover the services of first party during the time the same were performed in the State of Texas; and

"Whereas, the services in such State have been completed,

"It is agreed that the contract heretofore referred to be and the same is hereby rescinded, cancelled and held for naught as to the services performed by first party in any state other than the State of Texas.

"Witness the signatures of the parties hereto the day and date first above written.

"Gulf Refining Company,
"Witnesses:          By J. B. Heard,
"H. D. Johnston
"C. L. Berryhill          Carl Ambros Fields,
                                    "Employee."

In response to special issues the jury found:

(1, 2 and 3) That plaintiff, on or about February 13, 1936, sustained personal injuries while working as an employee of the Gulf Refining Company, and that they were received by him in the course of his employment with Gulf Refining Company; (4 and 5) that plaintiff suffered total incapacity as a natural result of said injuries, and that such total incapacity is permanent; (6) that payment of compensation to plaintiff in weekly installments, instead of in a lump sum, would result in a manifest hardship and injustice to plaintiff; (7) that plaintiff's total incapacity continued, or will continue, from the date of said injuries; (12) that Gulf Refining Company received notice of said injuries within 30 days after they were sustained; (13) that defendant carried a policy of workman's compensation insurance covering the employees of Gulf Refining Company at the time and on the occasion of said injuries to plaintiff; (14) that plaintiff did not sign the cancellation agreement dated February 12, 1936, purporting to have been signed "Carl Ambros Fields"; (15) that no part of plaintiff's incapacity was due to the effects of some

disease or infection or injury contracted or caused before or other than from plaintiff's injury of February 13, 1936.

### Opinion.

In its brief appellant urges 9 assignments of error, numbered from 1 to 9, inclusive, without reference to their original numbering. We shall refer to them by the numbers they bear in the brief.

■ Assignments numbered 1, 2, and 3 complain that certain arguments of counsel for appellee were so improper as to require reversal. The first portion of the argument complained of was the use of this language: "As loud as $80.00 can speak, as loud as 13 days in hospital can talk, and as loud as the Gulf money can say it, the answer is, 'yes.'" This sentence followed a question of counsel couched in the following language, "Were they seeking to clear up the mystery of the exact trouble of whether he was injured on that day," which question was preceded by a discussion of the failure of the witness to produce certain hospital files, and by a reference to the superior attention plaintiff received when treated at the instance of his employer as compared with that accorded him when he paid only $1.50. The jury was instructed not to regard the remark complained of. It is not suggested that counsel went out of the record in making recitals of fact, nor is he accused of resorting to abusive epithets that might unfairly prejudice the jury against the nurse and doctor who appeared as witnesses for defendant. Certainly the last two sentences standing alone are not an attack upon these witnesses. Appellee claims such an attack is the effect of the language when construed in connection with a substantial portion of the argument that immediately precedes the quoted sentences. We think there was no reversible error. Especially do we think so in view of the court's admonition. In the absence of a departure from the record, misstatements of the evidence, vituperation, or appeals to passion or prejudice, much latitude is allowed counsel in commenting upon the weight to be accorded testimony; and, though the court may disagree with the conclusions expressed and think them harsh and unjust, this opinion alone is insufficient to constitute noninterference reversible error. Standard Accident Ins. Co. v. Williams (Tex.Civ.App.) 4 S.W.(2d) 1023; Corn v. Crosby Cattle Co. (Tex.Com. App.) 25 S.W.(2d) 290.

■ The second portion of the argument complained of is a recital of the difficulty of obtaining employment when the seeker is affected by the result of injuries of such character as plaintiff claimed to be suffering from. The language challenged especially is the use of the words "let me march down the path of unemployment to the office of a great corporation or a small one." It is urged that this calls attention of the jury to the poverty of the plaintiff and the more favorable situation of the defendant in such a way as to constitute error. We do not so view the argument. It makes no reference to defendant. The entire evidence shows that plaintiff would seek his employment from an industrial or mining corporation. He is a manual laborer. Defendant is an insurance company. It was a part of plaintiff's case to show that a lump sum award was necessary to prevent injustice and hardship. Blaugrund v. King (Tex.Civ. App.) 73 S.W.(2d) 548.

The portion of the argument challenged under assignment 3, it is charged, informs the jury of the effect of their answer to special issue 14. A careful reading of the quoted portion of the argument discloses no reference to said issue. As well as one may judge from the language used, it is a reply to some previous argument of counsel for appellant. It neither mentions issue No. 14, nor the instrument therein inquired about, nor does it indicate how plaintiff desires the issue answered.

■ Appellant's assignments 4, 5, and 6 are predicated upon the theory that, if plaintiff signed the alleged cancellation agreement, he was thereby automatically deprived of a right to the benefits of the Texas Workmen's Compensation Act. We think this is not correct. It is undisputed that plaintiff was employed in Texas, that he and his associates laid the pipe line through a portion of Winkler county, Tex., to and across the New Mexico line. The employment was entered into in Texas, and it was continuous. There were no new negotiations. As to the signing of what the employer's representative, Mr. Johnson, styled releases, it appeared that, when Mr. Johnson, employer's representative, appeared upon the ground, plaintiff and his associates were working on the same pipe line, in the same manner, for the same pay, and under the same immediate superintendence as they were in Winkler county. The manner in which the signatures were

secured was thus described by Mr. Johnson:

"A. At first I started pulling them out one at a time and getting them to sign, and I got the men in front swabbing out the pipe line, and I went back behind and picked maybe two or three out, and I think I got the welder and the boy helping him and the foreman, Mr. Bloomer, and I decided we would stop the gang and take about ten or fifteen minutes and sign them all.

"Q. What did you do then? A. I went around on the east side of the truck out of the wind and they grouped around me and signed the releases.

"Q. What did you do, hand them out? A. No, sir.

"Q. How did you do? A. They were in duplicate, and as I called the name out that man would step forward and sign.

"Q. In duplicate? A. Yes, sir.

"Q. What did you do with the duplicate? A. Took both copies back to the Wink office.

"Q. You didn't give the men signing them any copy? A. No, sir."

Johnson further testified:

"Q. What did you say to them? A. I told them, in substance, that when they went to work in Texas they signed a Texas contract, and now, since their work in Texas was completed and they were in New Mexico they were required to sign a release from that contract, and I also told them not to return to Texas to do any more work unless they signed a Texas contract.

"Q. Again? A. Yes, sir, again."

Though the original contract was terminable at will by either party thereto, can it be said that the transaction described constituted a termination of the original contract and a re-employment under an "oral agreement of hire" entered into in New Mexico as pleaded by defendant? We think not. If plaintiff was then discharged from his former employment, when was he re-employed? What were the terms of the new contract? When was plaintiff consulted about it? When did the minds of the contracting parties meet as to its provisions? It is not claimed that there was a new writing. There were no new negotiations. It is not shown that the parties treated the "release" as constituting a discharge and re-employment. Bell v. Mulkey (Tex.Civ.App.) 248 S.W. 784; Id. (Tex.Civ.App.) 7 S.W.(2d) 115; Id. (Tex.

Com.App.) 16 S.W.(2d) 287. Certainly the facts justified the jury's affirmative answer to special issue No. 13 which was as follows: "Do you find from a preponderance of the evidence that the defendant, Gulf Casualty Company, had and carried a policy of workmen's compensation insurance covering the employees of Gulf Refining Company at the time and on the occasion of the injuries, if any, to Cecil A. Fields, on or about February 13th, 1936. Answer 'Yes' or 'No.' "

This was equivalent to a fact finding that the injuries were received while working in pursuance of the original employment, since it found that Gulf Refining Company's employees were covered by defendant's policy "on the occasion of the injuries * * * to Cecil A. Fields," etc. Upon this appeal no error is assigned as to the propriety of submitting this issue or as to the language in which it is stated. The language of Mr. Johnson in warning the employees not to return to Texas to "do any more work unless they signed a Texas contract," justified the jury in believing that the work in New Mexico was of a temporary character and that further work in Texas was contemplated. If the purpose of the alleged cancellation agreement was to accomplish a release of defendant's obligation while plaintiff worked on as before, it was ineffective. Texas Employers' Ins. Ass'n v. Volek (Tex.Com. App.) 69 S.W.(2d) 33; Texas Employers' Ass'n v. Price (Tex.Civ.App.) 300 S.W. 667.

■ Defendant did not request a finding as to whether at the time of the injury plaintiff was working under an oral agreement of hire entered into in New Mexico. It, therefore, waived that independent ground of defense. Ormsby v. Ratliff, 117 Tex. 242, 1 S.W.(2d) 1084.

■ Assignment No. 7 complains of an alleged answer of Dr. Calvert as to the cause of certain sickness of plaintiff. The bill of exceptions recited that the answer was, "In my opinion it was caused by the accident which he received while working for the Gulf Refining Company on or about February 12, 1936." The statement of facts shows that the answer was, "It would be my opinion that it was an injury to some of the organs within the abdominal cavity." Appellee invokes the rule that, when a bill of exceptions conflicts with the agreed and approved statement of facts, the latter controls. This contention must

be sustained. The assignment is, therefore, overruled. Smith v. Loftis (Tex.Civ.App.) 281 S.W. 604, citing Ramsey v. Hurley, 72 Tex. 194, 12 S.W. 56; Mills v. Mills et al. (Tex.Civ.App.) 253 S.W. 542; Bell v. Mulkey (Tex.Civ.App.) 248 S.W 784, 785.

See, also, Security Union Casualty Co. v. O'Pry (Tex.Civ.App.) 12 S.W.(2d) 1054; Jones v. National Cash Register Co. (Tex.Civ.App.) 52 S.W.(2d) 1083.

The court did not abuse its discretion in permitting George Deck to give opinion testimony as to whether a purported signature of plaintiff was genuine. The opinion was expressed after comparing the questioned signature with one admitted to be genuine. The witness was a bookkeeper and accountant, and for a number of years had been employed in various ticket offices of railroads where his duties were to check signatures on tickets for validation purposes, and to check names on travelers' checks against names on tickets. Garrison v. Garrison (Tex.Civ.App.) 66 S.W.(2d) 451; Southern Tel. & Tel. Co. v. Evans, 54 Tex.Civ.App. 63, 116 S.W. 418.

The court did not err in permitting plaintiff to testify as to his physical inability to perform certain work which he had been able to procure.

By its fifth assignment asserts error upon the part of the court in refusing to peremptorily instruct in appellant's favor, because the plaintiff was injured (if at all) in New Mexico, where, under the laws of New Mexico introduced in evidence, his exclusive remedy was under the Workmen's Compensation Act of that state (Comp.St.N.M.1929, § 156-101 et seq.); and, because plaintiff, having failed to deny under oath the execution of the written "release" or "abrogation" agreement of February 12, 1936, it was improper to submit any issue with respect to its execution. The assignment will be overruled. While it is true, that the denial of the execution of the instrument (being merely a verified denial of the material allegations of the amended original answer in which the execution of the instrument was pleaded) was insufficient as a plea of non est factum (Reed v. Brewer, 90 Tex. 144, 37 S.W. 418; State National Bank v. Stewart, 39 Tex.Civ.App. 620, 88 S.W. 295), this is immaterial if our views hereinbefore expressed are correct. As heretofore stated, the appellant did not request an issue as to whether after passing into New Mexico the parties terminated their old relationship and entered into a new oral contract of employment, as alleged by defendant.

All assignments of error are overruled, and judgment is affirmed.