SOUTHERN UNDERWRITERS v. WEDDLE.

No. 3687.

Court of Civil Appeals of Texas. El Paso.

June 9, 1938.

Rehearing Denied June 30, 1938.

Saunders, Akin & Williams and Claude Williams, all of Dallas, for plaintiff in error.

J. B. Cotten and John J. Watts, both of Crane, for defendant in error.

NEALON, Chief Justice.

This is a workman's compensation case. We shall designate the parties as they were known in the lower court. Defendant in error will be referred to as plaintiff and plaintiff in error as defendant. Plaintiff alleged that on or about November 9, 1936, while engaged in the regular course of his employment as an employee of W. W. Rollins, whose workmen's compensation insurance was carried by defendant, he was suddenly, accidentally and unexpectedly injured by breathing, inhaling and being subjected to poisonous gas and poisonous gaseous fumes and was overcome by said gas and gaseous fumes and fell off of a truck, and that as a direct and proximate result of said fall he sustained external and internal injuries to his back, hips, sides and pelvis, with sprain and strain to said members; that he had lost, to a great extent, the use of said members; that he had lost in weight and appetite, was unable to sleep or rest well, and since the date of said accidental fall, plaintiff had continued to suffer much pain in his back, hips, sides and pelvis and was unable to move, walk, bend or stoop in a natural, normal and usual way. He alleged also that poisonous gas and poisonous gaseous fumes breathed and inhaled by him on said date and occasion came from the barrels into which oil was being transferred, and he alleged that a great, unusual and sudden amount of gas and gaseous fumes were present on said date and occasion and were suddenly, accidentally and unexpectedly breathed and inhaled by him, and he thereby "sustained the following injuries: much fribosis and injury to the entire respiratory system, to the mucous membrane of the mouth, throat, bronchial tubes and lungs, resulting in active tuberculosis in both lungs; and resulting in serious injury to the bronchial tubes and adjacent organs, including the entire respiratory system," etc. He alleged total

and permanent disability and added that his then present physical condition was a natural and proximate result of the exposure to and inhalation of poisonous gas and poisonous gaseous fumes and the fall resulting therefrom on or about November 9, 1936, while he was in the employ of W. W. Rollins in Ward County, Texas. In the alternative he alleged that by reason of the inhalation of the poisonous gas and gaseous fumes a latent and dormant tubercular infection was made active and as a natural result thereof tuberculosis developed in the lungs of plaintiff, both in his right lung and in his left lung; and that by reason thereof he was totally and permanently disabled with reference to performing labor and earning money and obtaining and retaining employment; that as a natural result of said experience a latent and dormant tubercular condition theretofore existing in plaintiff was made active. Other allegations appropriate to a suit of this character were made, and plaintiff prayed for a lump sum judgment.

Defendant filed general demurrer and general denial.

The case was submitted to a jury which answered special issues in a manner favorable to plaintiff. Judgment was entered accordingly. From said judgment defendant prosecutes this writ of error.

### Opinion.

 Plaintiff in error filed forty-one assignments of error and submitted twenty-one propositions as applicable to issues raised by the assignments. The first twelve propositions charge that reversible error was introduced into the trial by twelve several expressions used in argument by counsel for plaintiff. Of these excerpts from counsel's argument the most serious is the one challenged by the first proposition, which, as shown by the bill of exceptions, was in the following language:

"All right, what did he do about the back pictures? I first handed him one of ours, and it was admitted in evidence. Dr. Gipson admitted that all of the lumbar vertebrae are supposed to look alike, and I said, 'Now, Doctor, draw out the contour of the fifth lumbar vertebra,' and he started out drawing, and he first tried to put the transverse process in there on me, but I happened to know a little something about that, I don't know very much about these gas experts, but I do know how to cross-examine some of these liars, these doctors.

You know, they say there are three kinds of witnesses, the liars, the damn liars, and the expert witnesses, and I think, so far as the defendant's witnesses in this case are concerned, there are three degrees of liars, and the worst happens to be in the category of expert witnesses."

The Court instructed the jury to disregard the argument.

The Court may not control counsel in the formation of their opinions as to the credibility of witnesses, and may control their expressions of opinion only to the extent of requiring them to be in decorous language compatible with proper respect for the Court and forbidding such abuse as is disrespectful to the tribunal or unlawfully impairs an opponent's rights. Except as the language may tend to inflame the passions of the jury so that they may not give due regard to the evidence and thus prejudice a party's right to a fair trial, the matter of preserving proper decorum and penalizing its violation is in the hands of the presiding judge. Unless the statements made are of such a character as to deprive a litigant of a substantial right a client may not be penalized for the transgression of his attorney. Reversals of judgments may not be awarded merely to discipline offending attorneys. In this case counsel apparently based his opinion upon his interpretation of the evidence. He did not pretend to have knowledge of the facts or of the character of the witnesses acquired outside the record. The epithet used was offensive and should not have been used. However, the Court promptly admonished the jury to disregard the argument, and it is not claimed that the language was repeated. Our views as to the latitude allowed counsel during argument were stated in Gulf Casualty Co. v. Fields. Tex.Civ.App., 107 S.W.2d 661. We think they apply here.

We think those views are not in conflict with the authorities cited by plaintiff in error. Woodard v. Texas & P. R. Co., 126 Tex. 30, 86 S.W.2d 38, is clearly distinguishable. In that case counsel went outside of the record to charge that counsel for the railway company, who were denominated "railway hirelings," would, if they could, do away with jury trials and the jury system, and charged that the railway company was drunk with power and had carried on propaganda in Louisiana and poisoned the minds of jurors there. In

the instant case it is not charged in any of the twelve propositions involving alleged improper argument that criticism of the insurance company or of its counsel or witnesses was voiced on account of any matters or conduct not arising during the trial. In McFaddin v. Hebert, 118 Tex. 314, 15 S.W.2d 213, and Texas Employers' Ins. Ass'n v. Rowell, Tex.Civ.App., 104 S. W.2d 613, the jury was informed of the legal effect of the answers, and in the last cited case counsel also departed from the record in attacking a class of witnesses, thus making himself a character witness as to them. It was held that counsel departed from the record and thus became an unsworn witness in Southwestern Bell Telephone Co. v. Hardy, Tex.Civ.App., 91 S.W. 2d 1075, Guardian Securities Corp. v. Mahoney, Tex.Civ.App., 49 S.W.2d 963, and City of Mart v. Hasse, Tex.Civ.App., 281 S.W. 318. In Metropolitan Life Ins. Co. v. Moss, Tex.Civ.App., 109 S.W.2d 1035, it was said that counsel made an appeal to the jury to disregard the evidence and find a verdict from the viewpoint of a litigant or interested party, while in Gulf States Utilities Co. v. Cauthen, Tex.Civ.App., 72 S.W.2d 370, the Court said appellee's counsel practically admitted that it was error to make the portions of the argument complained of.

Adhering to our views as expressed in Gulf Casualty Co. v. Fields, supra, and in conformity to the principles stated by the Commission of Appeals in Corn v. Crosby County Cattle Co., Tex.Com.App., 25 S.W. 2d 290, we overrule the assignments complaining of the arguments challenged by the first, second and third propositions.

■ Nor do we find any reversible error in any of the other arguments excepted to. As to the statements assailed in the second proposition, if it could be said there was error, the Court's admonition was sufficient to cure the error. Others were predicated upon plaintiff's opinion of the testimony and conduct of the case. As to one of these the Court certified that it was provoked by the following remarks of counsel for defendant respecting counsel for plaintiff:

"Gentlemen of the Jury, Cotten and Watts have been going around over the country, pulling the wool over the eyes of the jurors of this and other counties with these kind of cases. But, Gentlemen, you want to remember that the wool in this case is half Cotten. Yes, Gentlemen, Cotten and Watts want you to be a bunch of 'yes men' for them. They want you to answer these special issues, 'Yes, yes, yes, and Yes, Gentlemen,' they want you to sing a little song, 'Jesus wants me for a sunbeam to work for them each day.'"

When counsel for one litigant makes such an attack upon opposing counsel, he is hardly in position to complain of recrimination of like character.

■ Another assignment assailed the expression by plaintiff's counsel of the opinion that the jury's duty in the case was to answer the questions so as to give Mr. Weddle total and permanent disability. We cannot conceive of injury to defendant from this statement. It introduced no new element into the case. The whole trial informed the jury that it was contended by plaintiff that he was totally and permanently injured and that defendant was contending to the contrary. Counsel told them nothing that they did not already know from pleadings, proof and general conduct of the case. Broughton v. Humble Oil & Refining Co., Tex.Civ.App., 105 S.W.2d 480, writ refused. All assignments complaining of argument of counsel are overruled.

■ There was no error in refusing defendant's requested issue No. 10 which called for a finding as to whether the condition of disability was sustained as a direct and natural result of the alleged accidental injury, if any, of November 9, 1936, "notwithstanding any intervening independent disease or infection, if any, that plaintiff may have suffered subsequent to November 9, 1936, and prior to the time of trial." The issue seems to have been submitted upon the theory that the burden was upon the plaintiff to show that the injuries complained of proximately caused his incapacity, which is an incorrect theory. The issue does not inquire if the asserted subsequent disease was the sole cause of the incapacity. Texas Employers' Ins. Ass'n v. Birdwell, Tex.Civ.App., 39 S.W.2d 159 writ refused; Texas Employers' Ins. Ass'n v. Lovett, Tex.Civ.App., 19 S.W.2d 397 error refused; Travelers' Ins. Co. v. Peters, Tex. Civ.App., 3 S.W.2d 568, affirmed by, Tex. Com.App., 17 S.W.2d 457; Barron v. Texas Employers' Ins. Ass'n, Tex.Com.App., 36 S. W.2d 464.

■ By its 16th and 17th propositions plaintiff in error insists that the Court erred in refusing to declare a mistrial and

in entering judgment because the jury did not answer special interrogatories Nos. 10 and 12, which inquired as to whether the plaintiff's partial incapacity, if any, was permanent, and how many weeks of partial incapacity, if any, would result from the accidental injuries, if any, received by him. In answer to special issue No. 9 the jury found that the plaintiff did not sustain partial incapacity, and in answer to question No. 4 it found that he did sustain total incapacity. There was, therefore, no error in not requiring the jury to answer the issues as to a partial incapacity which it found did not exist. The assignments challenging this action of the Court are overruled.

By propositions 18, 19 and 20, plaintiff in error assails the findings of the jury to the effect that plaintiff inhaled poisonous gas thereby rendering himself totally and permanently disabled, upon the ground that it was contrary to the overwhelming weight of the evidence. The finding of the jury was that the plaintiff sustained "accidental personal injuries." It did not specify that they resulted from inhaling poisonous gas, though in answer to special issue No. 22 the jury did find that the gas which was present in the storage tank on the Tidewater lease on the day plaintiff received his injury was of a poisonous nature. As shown by our preliminary statement, plaintiff alleged, among other things, that his physical condition was a natural and proximate result of the exposure to and inhalation of poisonous gas and poisonous gaseous fumes and the fall resulting therefrom on or about November 9, 1936. Plaintiff testified that he was working on a truck bed and inhaled fumes and all at once fell from the truck; that the fumes smelled like rotten gas. Another witness testified that the wind was blowing the gas "back in his (plaintiff's) face and he fell off the truck." This witness testified that he "figured" that plaintiff was gassed, that he pulled him out and started artificial respiration; that plaintiff was unconscious. Dr. Brown testified that inhalation of sweet gas can produce a certain degree of irritation of the lung tissue, but "nothing like this sulphur gas," that sulphur gas has a characteristic odor of rotten eggs. Bowie Jones, who was present when plaintiff was injured, said the gas smelled like rotten eggs. Plaintiff testified that immediately after inhaling the fumes he fell off the truck; that he has since been unable to do manual labor because of pain in the back; that his back has hurt him "ever since that happened"; that he once had trouble with his lungs, and got "all right"; that immediately after the accident his tubercular symptoms returned. Dr. Brown testified that plaintiff's tuberculosis was active at the time of the trial. Dr. Black testified that the X-ray pictures of plaintiff's back revealed an arthritis that had been broken up. He thought that the arthritis was broken up by a traumatism, and a fall would be traumatic. He considered the accident the cause of plaintiff's trouble. All assignments complaining of the sufficiency of the evidence are overruled.

The Court did not err in refusing defendant's requested issue No. 7 which inquired as to whether the gas present in the storage tanks near the lease on which plaintiff was injured was what is commonly known as sour gas. The question was merely evidentiary and was sufficiently covered by special issue No. 22.

All assignments of error are overruled.

The judgment of the District Court is affirmed.