ASSOCIATED EMPLOYERS INSURANCE COMPANY, Appellant,

v.

Gus BURRIS, Appellee.

No. 6832.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 26, 1959.

Rehearing Denied March 2, 1959.

**114**

Underwood, Wilson, Sutton, Heare & Boyce, Amarillo, for appellant.

Merchant & Fitzjarrald, Amarillo, Edward L. Poole, Amarillo, of counsel, for appellee.

PITTS, Chief Justice.

This is a compensation suit in which appellant, Associated Employers Insurance Company, appeals from a judgment awarding appellee, Gus Burris, a compensation recovery of $24 per week for 401 weeks, payable on a weekly basis, for an accidental injury appellee received in the course of his employment on or about September 3, 1957, while employed by Traders Compress Company. The case was tried to a jury which found that appellee sustained an accidental injury on or about September 3, 1957, while engaged in the course of his employment by his employer, which injury was the natural result of his incapacity to work and of his becoming totally and permanently incapacitated for work from the date of September 3, 1957; that appellee's incapacity to labor was not caused solely by a heart condition existing prior to September 3, 1957; and that appellee told his foreman, Cecil Shanks, of his said injury on the date it occurred. Based upon the jury verdict, the trial court rendered judgment for appellee accordingly, from which judgment an appeal has been perfected by appellant admittedly raising the following "controlling questions": namely (a) whether appellee suffered an accidental injury to his heart on the alleged date or whether instead any incapacity appellee had resulted solely from a pre-existing condition; and (b) whether or not appellee gave notice of his alleged injury to his foreman, Cecil Shanks, on the

date thereof. Appellant's theories in answer to such question are supported by points of error duly presented.

Appellant contends that there was no evidence to support the foregoing stated jury findings, the effect of which placed liability of appellee's incapacity and compensation therefor upon appellant; appellant does not challenge the sufficiency of the evidence to sustain the findings of total and permanent incapacity of appellee but only challenges here those findings to the effect that appellee sustained an accidental injury while in the course of his employment for his employer and that his incapacity to labor was not caused solely by a pre-existing heart condition. Appellant further contends that the evidence was insufficient to support the jury findings here challenged and further contends that in any event the answers of the jury in making such findings were so against the overwhelming weight and preponderance of the evidence as to show bias and prejudice in the minds of the jury.

If an examination of the record reveals sufficient evidence to support the jury findings challenged by appellant, then appellant's charge of no evidence to support such findings will have been refuted. In determining the charge of insufficiency of the evidence, we must look to the revealed facts and circumstances most favorable to the findings and disregard all such to the contrary. Truelove v. Truelove, Tex.Civ.App., 266 S.W.2d 491, and Biggers v. Continental Bus System, Tex., 303 S.W. 2d 359. In determining the question of the jury answers being so against the overwhelming weight and preponderance of the evidence as to show bias and prejudice in the minds of the jury, we must examine and consider all of the evidence heard. In re King's Estate (King v. King), 150 Tex. 662, 244 S.W.2d 660 and 248 S.W.2d 525.

While appellee's pleadings have not been here challenged, it is well to state that he pleaded that on or about September 3, 1957, while on the job of his employer he was

moving a bale of cotton weighing approximately 500 pounds on a hand truck when it became stuck in some loose sand and while removing the said hand truck he suffered a severe strain, damage and over exertion to his heart, chest, circulatory system and other organs of his body so as to totally and permanently disable him for work; that his employer had knowledge of his injuries received at the time such occurred and immediately thereafter directed that he be taken to the physician and surgeon of his employer and of appellant herein for treatment and that notice of his injuries were likewise timely given to appellant. Appellant joined issues with appellee in his claims there made and further pleaded that any incapacity of appellee resulted "solely from a heart condition not caused nor contributed to by any on the job injury."

Appellee testified in effect that he had lived in Wellington, Texas, for 14 years and prior to that had lived in Idabell, Oklahoma; that he had no education but could read and write a little; that he could only do manual labor and before his injury in question he could do any kind of hard work and did do various kinds of manual labor; that previous to his injury he worked 8 years for Traders Compress Company and had worked steadily for said company for 4 years; that he had lost no time due to sickness but about 3 years prior to his injury here in question he had a leg injury caused by a bale of cotton falling on him while he was working for the same employer but he was not then off the job any and did not receive any compensation for that injury; that as a part of his work for his employer he alone was moving bales of cotton from one place to another by using a two-wheel hand truck; that on September 3, 1957, while he alone was moving a bale of cotton that weighed about 550 pounds under a closed in shed, he hit a loose sand bed and got stuck and in an effort to get his load out of the sand bed he suffered an awful bad strain which gave him much pain under his left shoulder; that he dumped his load and started back when his heart began smothering and he got completely out of breath until he got to the door for fresh air when he then felt a little better; that no other person was present when he first had the attack but Tommy Davis soon appeared and took appellee's hand truck; that he (appellee) could not talk very much but he then told his foreman, Cecil Shanks, that he had been hurt with a bale of cotton and was sick; that Cecil Shanks said, "Well, we got to try to get you to the hospital," and he called Mr. Pete Melton, superintendent of the compress, and the two together arranged with another employee to take him to the local hospital where Dr. Charley Jones, the compress doctor, examined him but did not give him any medicine; that the employee who took him to the hospital then took him home where he lay on the bed but was still suffering "awful bad" while his sister-in-law, Lucyle Burris, tried to comfort him but could not relieve him; that he could not rest either lying down or standing up; that his sister-in-law called Mr. Pete Melton who later that evening came and got him and took him again to the hospital where Mr. Melton talked with Dr. Charley Jones and left appellee in the hospital under the care of Dr. Jones; that he was given medicine that night which eased him; that he remained in the hospital under the care of Dr. Jones 4 days before returning home and had not since seen Dr. Jones professionally; that he was not improving and at the suggestion of his minister, went to Dr. H. H. Latson of Amarillo, Texas, for treatment and Dr. Latson gave him medicine for his heart condition and treated him for some time; that such treatment relieved him some but he still had smothering spells and had not recovered; that he later at the suggestion of his attorneys went to see Dr. George Royse of Amarillo, Texas, who also examined him; that soon after he left the local hospital he went back to the compress and tried to work for his employer but could not make it and had not worked or earned any money since that time; that he still had smothering spells frequently and felt

pains around his heart; that his doctor told him not to work and he had been incapacitated and could not work since receiving his injury on September 3, 1957; that prior to receiving such injury he had engaged in manual labor continuously and had never had any heart trouble or loss or shortage of breath.

Several of appellee's close neighbors testified that they had known appellee well for some time and saw him often both before and after the date of his alleged injury and that he appeared well and worked consistently before such date but had been sick and unable to do any kind of work since such date. One of appellee's former employers testified that he had known appellee about 10 years and appellee had worked for him about 4 years prior to the date of his alleged injury, running a concrete mixer and doing various kinds of heavy manual labor and "made me an awful good hand"; that he had since seen appellee working for the compress company before his alleged injury, moving bales of cotton without help; that he had also seen appellee since the date of his alleged injury; that he had never known appellee to have any heart trouble before September of 1957 and appellee had always appeared to be physically sound and well before such date but was incapacitated since such date and since such date he appears to have lost 40 or 50 pounds in weight. Appellee's sister-in-law, Lucyle Burris, gave testimony to the effect that appellee had lived for some time with her and her husband and was strong and did hard manual labor before the date of his alleged injury but since such date he has had heart trouble and some days she carries his meals to him in bed.

Dr. George T. Royse testified that he examined appellee on January 6, 1958, and found him then suffering from high blood pressure, hardening of the arteries, arteriosclerotic heart disease, which had not developed suddenly; that appellee was totally incapacitated to do manual labor and in his opinion will remain so as long as he lives; that the moving by appellee of a 500 pound bale of cotton on a two-wheel truck when it hit sand and stuck, giving appellee a jerk resulting in a sudden sharp pain under his left shoulder, would indicate symptoms of a heart attack; that in his opinion if such act or exertion of appellee occurred on the date stated, such caused his heart attack. On cross examination Dr. Royse testified that he saw and examined appellee only once and that was on January 6, 1958, which, according to the record, was about 4 months after the alleged injury occurred. Dr. Royse continued to testify that the condition he found did not suddenly happen, leaving the impression along with his previous testimony that such condition probably began with the strain resulting from appellee's exertion while handling the bale of cotton on September 3, 1957.

Dr. Latson did not testify but Dr. Charles Jones gave testimony to the effect that he found appellee's heart failing to function properly and he was incapacitated and he advised appellee not to work any more. The testimony of Dr. Jones and that given by appellee's foreman, Cecil Shanks, and F. H. Melton, superintendent for appellee's employer, Traders Compress Company, corroborated some of the testimony of appellee. The testimony of Shanks and Melton reveal that appellee had made them a good hand. Appellee's foreman, Cecil Shanks, testified that during the time he had been with the compress company he had never had a better hand than appellee and further testified, "He is the best one on the job." But other testimony generally given by these three said witnesses controverted some of appellee's testimony and their testimony indicated that appellee's heart trouble was a pre-existing condition before the date of his alleged injury.

We have before us, as the trial court did, the positive testimony of appellee, who is an illiterate colored man but who stood by his testimony under a careful cross examination, and whose testimony was corroborated in part by that given by several of his neighbors, his sister-in-

law, a former employer and by the testimony of Dr. George T. Royse, as against some of the testimony of Dr. Jones, Cecil Shanks and F. H. (Pete) Melton. Such testimony was all heard by the jury and it is elementary that when evidence is controverted the jurors in such a case are the sole judges of the credibility of the witnesses and the weight to be given their testimony and it is within the province of the jury to determine the facts from conflicting and inconsistent testimony of the witnesses when such exists. Neither the direct or opinion testimony of an expert, when controverted, is binding upon a court or jury in a case such as this. We believe the positive testimony of appellee himself supported in part by some of his neighbors, his sister-in-law, one of his former employers and particularly by that of his medical witness, Dr. Royse, was sufficient to support the findings of the jury about which appellant complains here. Angelina Casualty Co. v. Spencer, Tex.Civ.App., 310 S.W.2d 682; Texas Employers' Ins. Ass'n v. Moore, Tex.Civ.App., 284 S.W.2d 175; Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561.

■ Applying the rules of law previously herein shown, there was sufficient evidence to support the jury findings challenged by appellant and such findings were not so against the overwhelming weight and preponderance of the evidence as to show bias and prejudice in the minds of the jury. As a matter of precaution the trial court charged the jury in part as follows: "Do not let bias, prejudice, sympathy, resentment or any other emotion play any part in your deliberations." It is presumed that the jury observed such instruction and we find nothing in the record to indicate that the jury failed to so do. For all of the reasons stated, appellant's points challenging the said jury findings shown are overruled.

■ Following in part the same procedure as that previously shown, appellant charges that there was insufficient evidence to support the jury findings to the effect that appellee told his foreman, Cecil Shanks, of his said injury on the date such occurred, and further charges that such finding was so against the overwhelming weight and preponderance of the evidence as to show bias and prejudice. The record reveals that appellee swore positively that he did tell his foreman, Cecil Shanks, about his injury on the day it occurred and Cecil Shanks swore just as positively that appellee did not tell him that he was injured. The jury heard their controverted testimony and resolved their answers in favor of appellee's testimony. Under the authorities and rules of law previously cited herein and the reasoning previously given in similar matters, the charge and complaint here made are overruled.

Notwithstanding the fact that appellant's "controlling questions" previously presented have been considered and disposed of by us, other points are presented by appellant which will now be considered. Appellant presents points of error based upon bills of exception found in the record complaining about certain arguments therein shown at length to have been made to the jury by appellee's counsel. The contents of the bills of exception containing the arguments complained about cover most of 18 pages in the transcript and are too lengthy to be copied and set out in this opinion, however, the trial court considered these matters and seems to have concluded that no errors had been committed and in our opinion a careful examination of each of the points presented and the arguments of counsel complained about nowhere reveals any prejudicial error such as would constitute a reversible error, if in fact any error, committed. While there are 11 bills of exception shown, appellant briefs only 10 of them presented in four separate points, omitting bill of exception No. 8, which, not having been briefed, is waived. The record reveals that appellant presented bills of exception Nos. 1, 6 and 11 in Point 5 complaining about unrelated arguments of counsel on three different occasions; bills

Nos. 2, 3, 4 and 9 raising questions about unrelated arguments were presented in Point No. 6; bills Nos. 5 and 7 were presented in Point No. 7 and bill No. 10 was presented in Point No. 8, leaving bill of exception No. 8 not briefed.

The record reveals that in some instances the trial court sustained appellant's objections to the argument in question of appellee's counsel but no requests having been made to instruct the jury to disregard such argument, no such instructions were given. In other instances the trial court overruled appellant's objections and thus held the arguments of appellee's counsel were not improper, or if improper, not material. It has long been the rule that counsel in making his argument to the jury has a right to draw reasonable deductions from the evidence heard and a wide latitude is given a trial court in hearing arguments of counsel made to the jury. F. H. Vahlsing, Inc., v. Hartford Fire Ins. Co., Tex.Civ.App., 108 S.W.2d 947; Southern Underwriters v. Weddle, Tex.Civ.App., 118 S.W.2d 1008; Stolpher v. Bowen Motor Coaches, Tex.Civ.App., 190 S.W.2d 376. It has been uniformly held in this state that the question of whether or not an argument of counsel is calculated to prejudice or injure the rights of an adverse party to the suit is addressed to the sound discretion of the trial court, with which a reviewing court will not interfere unless it is apparent that the trial court has abused its discretion. Texas Employers' Ins. Ass'n v. Davis, Tex.Civ.App., 228 S.W.2d 257; Thornburg v. Manskey, Tex.Civ.App., 219 S.W.2d 720; Belt v. Texas Co., Tex.Civ.App., 204 S.W.2d 653; Burrow v. Davis, Tex.Civ.App., 226 S.W.2d 199; Texas Employers' Ins. Ass'n v. Sevier, Tex.Civ.App., 279 S.W.2d 473. In our opinion the trial court in the case at bar did not abuse its discretion in passing upon the questions complained about here. Consequently appellant's Points 5, 6, 7 and 8 complaining about the arguments of appellee's counsel are all overruled.

Appellant further complains because the trial court refused to admit in evidence its Exhibit 1-A, asserting it would have corroborated the testimony of Dr. Jones. It appears from the record that the trial court sustained appellee's objections to the admission of this exhibit as evidence because the same appeared to be an X-ray of some sort but had not been sufficiently identified. Texas Employers' Ins. Ass'n v. Crow, Tex.Civ.App., 218 S.W.2d 230, affirmed 221 S.W.2d 235. Such a matter was within the sound discretion of the trial court and according to the record before us we do not think it abused its discretion. Hence, appellant's complaint about such being excluded is overruled.

Appellant contends that since the right to recover compensation on a weekly basis for a general incapacity exists only during the employee's lifetime and does not survive his death, it was error for the trial court to refuse to so limit the recovery in its judgment. We overrule such contention because, if appellant's statement of the law made in its point is correct, its rights were not prejudiced in any way by the failure of the court to limit recovery to appellee's lifetime, particularly since the payments can be withheld if appellee should die. In any event, if appellant's statement of the law be correct, there is no occasion for the trial court or this court to be speculating about the lifetime of appellee. If appellant's statement of the law is not correct, then it would have been error for the trial court to have sought to so limit recovery.

Some question has been raised about the actual date of appellee's alleged injury, there being some indication to the effect that such occurred on September 11, 1957, rather than September 3, 1957, but we do not consider such question a material one.

Under the record before us and the briefs presented, we find no reversible error committed. Consequently, appellant's points to the contrary are all overruled and the judgment of the trial court is affirmed.