**COLUMBUS MUT. LIFE INS. CO. v.
OLDHAM et al.**

No. 1769.

Court of Civil Appeals of Texas. Eastland.

March 18, 1938.

Rehearing Denied April 15, 1938.

Davidson & McMahon, of Abilene, for appellant.

D. M. Oldham, Jr., of Abilene, for appellees.

FUNDERBURK, Justice.

Mrs. Minnie H. Oldham and Miss Ann A. Oldham, mother and sister, respectively, of Holmes C. Oldham, deceased, brought this suit seeking recovery upon a life insurance contract consisting of a master or group . policy issued by the Columbus Mutual Life Insurance Company to South Plains Automobile Club, Inc., and a certificate or membership policy issued by said insurance company to Holmes C. Oldham. By both policies the insurer contracted to insure said Holmes C. Oldham "against loss by death * * * resulting. from bodily injuries caused directly, solely and independently of all other causes by external, violent and accidental means which bodily injuries or their effects shall not be caused wholly or in part, directly or indirectly, by any disease, defect or infirmity and sustained by the insured * * * while * * * riding in an automobile." Such obligation was expressly made subject to "all conditions and limitations" contained in the membership certificate "including the standard and additional provisions of said group policy." The amount of indemnity for death after three years' membership (insured having been a member for three years) was the sum of $1,300. Both the group policy and the certificate to the member recited that the insurance did not cover the following: "(1) Suicide ·or attempt thereat while sane or insane; (2) While riding or driving in races or any driver or occupant of any automobile in any race or speed contest anywhere, or while testing any automobile on any track or speedway; (3) Loss fatal or otherwise suffered while intoxicated or under the influence of or while affected by or re- ·sulting directly or indirectly from intoxicants or narcotics; (4) Persons under the age of 16 or over the age of 75 years;

(5) Loss sustained while riding in an automobile being driven by any person under the age allowed by law or under the age of sixteen years in any event; (6) A· machinist in repairing, overhauling or testing an automobile; (7) While cranking an automobile; (8) Loss fatal or otherwise suffered by ·a hired operator; (9) Any loss sustained by carbon monoxide gas; (10) Loss sustained while riding in or on a motorcycle or a side car attached thereto, regardless of how the accident may occur; (11) For any accident sustained while entering or leaving an automobile; (12) Employees of Police or Fire Departments while on Duty; (13) Hernia; (14) As the result of injuries intentionally inflicted upon the Insured by himself or any other person * * *."

There were certain "Conditions and Provisions" set out in the Group Policy, not deemed necessary to state in this connection, which included in paragraph No. 18 thereof the foregoing statement of things not covered by the insurance.' Plaintiffs, in their petition, after alleging generally the terms and provisions of the membership certificate or policy, further alleged: "That said ·policy refers to and mentions the fact that the owner of the certificate, Holmes C. Oldham, is insured under a group accident policy issued by The Columbus Mutual Life Insurance ·Company. Said certificate in no manner identifies nor specifies the terms, conditions or stipulations contained in the group policy or' the master policy to which the certificate vaguely refers. The terms, conditions, reading and effect of the same were not known to the deceased or to plaintiffs, they having no knowledge · or notice· of the terms and conditions contained in the group policy, nor was a copy delivered to them; but the defendants and each of them are here now given notice to produce upon the trial of this cause said group or master policy issued by the defendant insurance company, or else secondary evidence will be used to prove the contents of the same."

After describing the manner and cause of death of Holmes C. Oldham, plaintiffs alleged that "the loss did not occur nor was it the result of a violation of any of the exceptions contained in the policy." There were, it is' believed, allegations of compliance with each and every provision of the policies which by fair construction could be regarded as conditions precedent to liability of the insurer. The defendant

696

the Columbus Mutual Life Insurance Company answered only by a general demurrer and general denial. The court, as a matter of law, found the nonliability of defendant South Plains Automobile Club, Inc., and it was discharged. The issues as between the plaintiffs and defendant the Columbus Mutual Life Insurance Company were submitted to a jury and all found in favor of the plaintiffs. From the judgment rendered in accordance therewith, and after motion for new trial had been overruled, defendant the Columbus Mutual Life Insurance Company has appealed.

The two contracts involved, or two parts of the one contract, i. e., the certificate of membership or policy and the group or master policy, were designated in the record as Exhibits "A" and "B," respectively, and for brevity said instruments will be hereinafter referred to in the same way.

By its first proposition appellant makes the point that since the instrument designated Exhibit A was not set out as an exhibit to appellees' petition, and when it was offered in evidence "contained provisions which would materially qualify and vary the sense and legal effect of the allegations of appellees' trial pleading, setting forth in substance the terms of said policy, which provisions were nowhere pleaded by appellees; it was accordingly error for the trial court to admit said Exhibit 'A' in evidence over the objection that same was at variance with the contract pleaded."

A similar contention is presented by appellant's second proposition having reference to the admission in evidence of Exhibit B, over the objections that no predicate therefor had been laid in the pleadings and the instrument was at variance with the contract of insurance pleaded; "since said Exhibit 'B' is not an unconditional contract, but is qualified by numerous provisions therein set forth."

Each of said propositions presents alike the same question of variance arising, however, upon the different instruments; while the latter presents the additional question of the lack of support in the pleadings for the introduction of Exhibit B.

■■ Had the several contracts been attached as exhibits to appellant's pleading, the particular questions of variance, it is believed, could not have arisen. There can be no variance between pleading and proof when the proof consists of an instrument constituting the cause of action in the case, and is set out as an exhibit to the

pleading. Beham v. Ghio, 75 Tex. 87, 12 S.W. 996; Phoenix Ins. Co. v. Boren, 83 Tex. 97, 18 S.W. 484; Mast v. Nacogdoches County, 71 Tex. 380, 9 S.W. 267; Longley v. Caruthers, 64 Tex. 287; Spencer v. McCarty, 46 Tex. 213; Pyron v. Grinder, 25 Tex.Supp. 159, 160.

■■ There is no statute, or rule having the effect of a statute, so far as we know, requiring that an instrument constituting the foundation of a cause of action, alleged in a petition, be set out as an exhibit. "While exhibits of the kind permitted may be made, they are to aid the pleadings by making more certain and readily understood allegations contained in the pleading, and cannot supply the place of an omitted fact." Townes, Texas Pleading, 2d Ed., p. 424.

■ Exhibits A and B seem to have been regarded by both parties as but different parts of a single contract of insurance. Whether properly to be considered as two contracts or one is not important here. Appellees in their petition notified appellant to produce upon the trial said Exhibit B. The evidence showed that before the trial, and before appellees' trial pleading was filed, appellant supplied appellees' attorney with a copy of said instrument. Said Exhibit B contained as a part thereof the terms and provisions of Exhibit A. In the very nature of such circumstances we think appellant could not have been surprised because of any provisions, or the absence thereof, in the instrument when offered in evidence. It is not accurate to say that the pleadings alleged an unconditional obligation while the instrument offered in evidence proved a conditional obligation within the operation of the principle that a plaintiff can recover only upon proof of the contract alleged. McAlister v. Bivings, Tex.Civ.App., 29 S.W.2d 853. In their pleadings, the appellees alleged that the "loss did not occur, nor was it the result of, a violation of any of the exceptions contained in the policy." This prevented any inference that the contract contained no exceptions from the risk for which indemnity was sought. There could, therefore, be no variance between the pleading and the policies resulting alone from the fact that the latter contained exceptions. The facts in Phoenix Ins. Co. v. Boren, 83 Tex. 97, 18 S.W. 484, with respect to the question here considered, differed from the present case in only two particulars. In that case, unlike the pres-

ent, the policy was attached to plaintiff's petition as an exhibit; but also, unlike the instant case, there was nothing in the pleading to advise that the obligation sought to be enforced was, according to the provisions of the contract, subject to exceptions or qualifications. The court considered the pleadings defective, but no point was presented as to the sufficiency of the pleadings. "The defect in the petition," said the court, "consisted in the want of negative averments that the loss did not occur through a fire not insured against." The absence of a like defect in the present case renders it immaterial that the policies were not attached as exhibits to plaintiffs' petition. Variance is avoided just as effectively in this case as in that, but only in a different way—there, by exhibiting the contract showing exceptions; here, by alleging that the accident and injury did not result under circumstances specified in any of the exceptions. It is, therefore, our conclusion that under the circumstances the policies were admissible as against the objection of variance.

 Nor do we regard the point well taken that there was no basis in the pleadings for the introduction of Exhibit B. It is argued that while appellees' pleading alleged a want of knowledge of the provisions of said instrument, it was shown by the evidence that appellees, through their attorney, did have such knowledge before the trial pleading was filed. We cannot see that such fact alone is of any importance. We are of the opinion that recourse to the provisions of Exhibit B was not necessary to an enforcement of the obligations in Exhibit A, except, perhaps, as showing exceptions to, or qualifications of, such obligations. As to the latter, a variance between the pleading and Exhibit B was avoided by the allegation already considered, the same as it was avoided as to Exhibit A. No other basis in the pleadings for the admission of Exhibit B is believed to have been necessary.

By appellant's third, fourth, and fifth propositions the single contention is presented that there was no testimony offered by the appellees to the effect that the deceased, Holmes C. Oldham, died on the evening of December 21, 1935, as a result of injuries caused directly and solely and independently of all other causes, while riding in an automobile, about midnight December 19, 1935. We think the undisputed evidence justifies the statement that the in-

sured Holmes C. Oldham died on the evening of December 21, 1935, as the result of injuries caused by an accident while riding in an automobile on the night of December 19, 1935. The only elements in the special verdict of the jury which were possibly not conclusively so established were whether such injuries were caused *solely* from such accident and *independently of all other causes*. It will not be profitable, perhaps, to set out in this opinion all of the testimony which we think warranted the verdict of the jury to the extent that it was thereby found that such injuries did so result solely and independently of all other causes.

 By appellant's sixth proposition it is contended that since the evidence raised an issue as to whether or not the injury and death of the insured was affected by intoxication, it was incumbent upon appellees, before any recovery could be had by them in this cause, to plead and prove and have the jury find that the death of Holmes C. Oldham was not occasioned by injuries suffered while he was affected by intoxicants. Upon one issue submitted, the jury found that insured was not *intoxicated* at the time of the accident, and upon another that he was not *under the influence of intoxicants* at the time of the accident. No objection was made to the submission of said special issues, or either of them, upon the specific ground that they called for no finding of whether insured was *affected* by intoxicants, as distinguished from intoxicated or under the influence of intoxicants. The objection relied upon to preserve the point was addressed to all the issues and was to the effect that "nowhere in said charge does the court inquire of the jury as to whether or not the alleged accidental injury and alleged resulting death of said Holmes C. Oldham did not come within the other exceptions contained in the policy of insurance sued upon and offered in evidence in this case." The question which that objection would seem to raise, if sufficiently specific for even that purpose, is a very different question from the one now under consideration—and as a basis for which the objection is now sought to be used. Special issues Nos. 3 and 4, the findings whereon with reference to the question of intoxicants are stated above, certainly constituted an attempt at the submission of a proper issue. But in the absence of specific objection pointing out to the court that one or the other of said issues was too narrowly stated

so as to exclude an element specified in the policies, appellant must be deemed to have waived the imperfect submission. R.S.1925, art. 2185; Harris v. Thornton's Dept. Store, Tex.Civ.App., 94 S.W.2d 849. It is our view that while the issue in reference to intoxicants was submitted in two parts without objection there was actually but one issue consisting of a number of elements, namely, (1) intoxicated, (2) under the influence of, (3) while affected by, or (4) resulting directly or indirectly from intoxicants. But two of these elements were mentioned in the submission of the issues. The right to complain of the failure to include the others is a right dependent upon a showing that timely specific objection was made to the omission. The objection relied upon was insufficient, we think, to serve the purpose of the law in making such right conditional upon objection having been made. Isbell v. Lennox, 116 Tex. 522, 295 S.W. 920.

■■ Recurring to the objection to the submission of the issue or issues regarding intoxicants we do not think any question is presented such as is suggested by the objection. That question would appear to be whether there were issues of fact, which appellees had the burden of establishing, essential to support any judgment in their favor, but which were not established. The law, as it was once interpreted, required that each and every issue in a case tried by jury and submitted for a special verdict be established by the verdict. Silliman v. Gano, 90 Tex. 637, 39 S.W. 559, 40 S.W. 391. If that were still regarded as a requirement of the law, the verdict embracing as it does no finding upon some of the matters involving the exceptions provided in the policies, a fundamental error would be shown. But, under the law as now interpreted findings upon issues, though material are not required to be embraced in a special verdict, under at least two conditions. One is where there is no evidence upon an issue. The other is where the issue is established conclusively by the evidence. Livezey v. Putnam Supply Co., Tex. Civ.App., 30 S.W.2d 902. We, therefore, have no means of knowing that any or all of the issues which appellees had the burden of establishing and which were not submitted to the jury were not conclusively established by the evidence in appellees' favor. If they were not, the error in failing to submit them to the jury is not fundamental, since it would not appear upon the face of the record proper (i. e., the Transcript). No assignment of error, at least none that is attempted to be briefed, invokes our jurisdiction to determine whether there were issues among those which appellees had the burden of establishing, which were supported by no evidence, or which, though supported by evidence, were not conclusively established and should, therefore, have been submitted to the jury.

By appellant's seventh proposition the point is made that it was not sufficient only to submit, as an issue to the jury, whether the death of insured resulted from bodily injuries caused directly, solely, and independently of all other causes by external violent and accidental means, without calling for a finding of whether such injuries were sustained (A) while driving or riding in an automobile, (B) in consequence of the explosion or burning of an automobile. This contention, we think, is fully answered by the statement hereinabove made that in our opinion the evidence should be regarded as having established conclusively that the accident occurred while insured was riding in an automobile.

■■ Hon. D. M. Oldham, Jr., counsel for appellees, in his closing argument to the jury said: "Now, gentlemen, what do we find from Dick Delaney, the only one that was at that party that is trying to cast any aspersions of foulness on the dead man who is not here in this suit. We find two young men undoubtedly liking the same girl. We find five of them out on a party. The living one actuated by jealousy and he comes in here and yonder to besmirch the good name of the boy who went on the party that night, after that boy is dead and cannot be here to take his part. Gentlemen, I say that the evidence proves the hired insurance adjuster is not worthy of belief. Listen here what he said about him out there—is Dick Delaney a fair and impartial witness?" Here the counsel read, apparently from a Q. and A. statement, and then concluded "showing there that this boy was jealous of the one that got killed and is now willing to besmirch his character." Another part of his argument was: "We do expect you to answer these questions that we have discharged the burden of proof—that our witness, Peggy Durkin, who is the only living witness here—we have brought her here and she has told you unequivocally what he drank, that he was not intoxicated and that she turned his car over. The other witness, who was a jealous lover of a

certain girl * * *." Here counsel interrupted with an objection that, "There is no statement in the record to that effect." Mr. Oldham replied, "There certainly is in this record." The court then said: "Don't consider that statement, gentlemen,—go ahead Mr. Oldham." Mr. Oldham continued: " 'That there was petty jealousy,' are the words used in her deposition, between the two." The parts of these arguments most vigorously assailed are the statements in reference to "petty jealousy" and "we find two young men undoubtedly liking the same girl." The portions of the evidence quoted and relied upon by counsel in justifying his argument is as follows:

"Q. After you went down to the night club some little rift or petty jealousy had come up within the evening's course between you and Holmes that amounted to nothing serious? A. Yes sir.

"Q. And Holmes was a kind of boy who would kind of swell up and get pretty stubborn? A. Yes sir.

"Q. And if he thought his girl was showing a little attention to another fellow he would come out and let him know it pretty quick? A. Yes sir.

"Q. And if he did that he didn't have to be intoxicated? A. Not in the least.

"Q. And he was not intoxicated at any minute from the time you left Amarillo until you turned the car over that night? A. Not one.

"Q. You know when a person is drunk or tight? A. Yes sir, I do. * * *

"Q. Did he (Oldham) do anything unbecoming a gentleman at any time that night? A. No sir.

"Q. Did they dance at the night club? A. Yes sir.

"Q. Does Dick Delaney dance? A. Yes sir.

"Q. And the other boys and girls dance? A. Yes sir.

"Q. Holmes didn't go into the night club one minute? A. No sir.

"Q. But stayed in the car? A. Yes sir, and pouted. I went out to the car at least one time and tried to get him to come in and be sociable and he wouldn't do it and we broke up and went home.

"Q. Did he go into the night club and drink at all? A. No sir.

"Q. Did he have a single drink there? A. No sir. * * *

"Q. Did you ask anyone to pilot you out of town? A. Yes, I asked Dick Delaney.

"Q. Did he do it? A. Yes, he drove out to the highway, to the edge of the city limits.

"Q. Now, Miss Peggy, you and Holmes, in ordinary parlance, they might call you sweethearts? A. You might call us that.

"Q. Nothing serious, or wedding contemplated; but just good boy and girl friends? A. Yes sir.

"Q. And he would come all the way over here from New Mexico, from the ranch, and make you little visits? A. Yes.

"Q. And you would entertain him, and he did enjoy your company and you his? A. Yes."

Dick Delaney testified:

"Q. How long have you known Miss Peggy Durkin of Amarillo, Texas, and have you had a fairly close and intimate acquaintance with her during this period of time? A. I have known her thirteen years. Just friends. * * * She is a lady. I have never seen her act in a disgraceful manner since I have known her."

It has been said: "Fair criticism of a witness and his testimony, when justified by the record, is not objectionable; indeed in this respect counsel is allowed great latitude. He may broadly discuss the conduct and character of witnesses as revealed by the evidence, and comment on the manner in which they give their testimony." 41 Tex.Jur. p. 787, § 68. The testimony quoted shows that counsel was not testifying but was arguing his inferences or deductions from the evidence, and we think the test is not whether such inferences and deductions are fully and logically warranted. Allowance must be made for some differences of opinion. This court recently sanctioned the proposition "that an attorney may state his inference from the evidence and draw his conclusions therefrom in his own manner, even though such inference and conclusions may be illogical, improbable, erroneous or absurd." Patterson v. Fuller, Tex.Civ.App., 110 S.W.2d 1230, 1233. We are unable to say that the argument was without justification or support in the record.

Being of the opinion that no error is shown calling for a reversal of the case and that the judgment should be affirmed, it is accordingly so ordered.