**THORNBURG et al. v. MANSKEY et al.**
No. 5959.

Court of Civil Appeals of Texas. Amarillo.
March 28, 1949.

PITTS, Chief Justice.

. This is a suit contesting the will of Orvil Lee Thornburg who died in Carson County on February 11, 1948, leaving an estate valued at approximately $40,000 to his sister, Marie Manskey, and his brother, Guy D. Thornburg, with certain provisions therein made to care for his mother, Sarah Thornburg, during her lifetime. He left surviving him seven children, three of whom were minors. The deceased had been divorced from his wife, Alma Thornburg, the mother of all of the said seven children, on September 23, 1942, and a property settlement had been made with her in the judgment for divorce. At the time the divorce was granted the ages of the three minor children were 9, 11 and 15 years and their custody had been equally divided between the parents. The father was required to pay into the treasury of the court $50 per month for the support of the children during the period of time each year their mother had their custody. The father's will which is here contested was executed on December 23, 1942. Marie Manskey, the named independent executrix of the testator's will, offered the same for probate in the County Court of Carson County on February 26, 1948. The same was contested by six of the testator's children, namely, Lilia Thornburg Miller and Juanita Thornburg Bridges, joined pro forma by their husbands, Orvil Lee Thornburg, Jr., and the three minor children, Lela Ernestine Thornburg, Violet Alene Thornburg and LeRoy Thornburg, appearing through Alma Thornburg, their mother, as natural guardian and next friend. Alma Thornburg contested the will only as the natural mother and next friend of the three minor children. One of the seven children, named in the will as Alva Carroll, did not join in the contest of the will.

The will was admitted to probate by order of the county court. The contestants as appellants appealed the case to the district court where a trial was had to a jury and the action of the probate court was sustained as a result of the jury findings. An appeal has been perfected to this court. In the trial court the jury found that the testator executed the will in the presence

Simpson, Clayton & Fullingim, of Amarillo, for appellants.

Underwood, Wilson, Sutton, Heare & Boyce, of Amarillo, for appellees.

of the witnesses whose names were subscribed thereto and that the testator was of sound mind at the time he executed the will. These findings are not challenged but appellants complain because of the refusal of the trial court to submit to the jury the issue of undue influence. They further complain because of the exclusion of certain testimony from the jury and because of asserted prejudicial conduct and argument by counsel for the proponents or appellees herein.

Soon after the divorce judgment was granted on September 23, 1942, Orvil Lee Thornburg visited the office of Mr. R. E. Underwood, one of the attorneys representing appellees in this case, and consulted him professionally, complaining about the unfairness of the property settlement made between him and his former wife, Alma Thornburg, in their divorce suit. There then existed dissension and bad feeling between the parties. The record reveals that accusations of theft were made and gun plays had been made between the parties on Thanksgiving Day, 1942. On December 23, 1942, Orvil Lee Thornburg went again to the office of Mr. R. E. Underwood, unescorted by any of the proponents or appellees herein, and asked Mr. Underwood to write his will for him. He then and there stated that his former wife and his children were all working close together against him and he was left all alone. He further asserted that he was afraid of being killed, assassinated or shot any time at night and related a number of the difficulties between them. He further stated that his former wife and the children had gotten a greater share of the property in their division and settlement of the property rights previously thereto and that he had previously sufficiently cared for the children. He further stated that he had virtually raised his brother, Guy D. Thornburg, who had been with him since he was eight or nine years old, and he wanted his property left to Guy and his sister, Mrs. Marie Manskey, with a provision made for his mother to be cared for. Several witnesses testified concerning the many unpleasant difficulties between Orvil Lee Thornburg and his former wife and

some of the children. The will was accordingly prepared by Mr. Underwood and the same was executed by Orvil Lee Thornburg as testator. The fourth paragraph in the will makes the following provision:

"I am divorced from my former wife, Alma Thornburg, and I am the father of seven children born to the marriage of her and myself. Division has heretofore been made between such former wife and myself of all of our property. I have given to my said beloved children property heretofore and feel that the provisions I have heretofore made for such children are sufficient, and I make no bequest of any part of my property to any of said children (here naming each of the children)."

A large part of the voluminous record on appeal pertains to the issue of testamentary capacity of the testator heard in the trial court. That issue is not being contested on appeal and that part of the record pertaining to that issue is not therefore material here except as it may have some bearing or relationship to the issue of undue influence. In contesting the will appellants pleaded as a part of the grounds of the contest that the proponents or appellees, Marie Manskey and Guy Thornburg, brought undue influence to bear upon the testator, Orvil Lee Thornburg, which induced him to make the will in question. Appellants requested that the issue of undue influence be submitted to the jury but the request was refused by the trial court and appellants charge that such a refusal was a reversible error. Several witnesses bore testimony containing declarations made by the testator, both before and after the will had been executed on December 23, 1942. But most, if not all, of the declarations of the testator given by witnesses having any bearing on the issue of undue influence were made after the will had been executed.

In support of their contentions that the issue of undue influence should have been submitted to the jury as pleaded by them, appellants offered the testimony of several witnesses, whose testimony is hereinafter set out. Testator's former wife, Alma Thornburg, testified that she had a con-

versation with the testator in February, 1944, in which he told her, in effect, that he was planning to marry again; that he had made several mistakes which he regretted, one of which was he had made a will since their divorce leaving the children out; that he had gone down to see his mother, Marie and Guy several times and they kept after him to make a will and to be sure to get the majority of the property and that his sister, Marie Manskey, said, "Make your will and make it out to mother, Guy and me and we'll see that Alma and the children won't get any more of that property"; that they just kept pounding and pounding at him until he made the will; but when he married again, he was going to make a new will to his wife and children. The record reveals that he did marry again but the record does not disclose that a subsequent will was executed by the testator. However, Corine Howard testified that the testator told her in March, 1945, that he had a will fixed for his second wife and O. J. Hess testified that testator told him in 1947 that he had a will fixed for his children. Buck Seitz testified that the testator told him in 1945 or 1946 that he guessed he had done wrong in willing everything to Guy and Marie and that he had decided to write a new will since his children had worked hard and he thought they deserved their part. A. D. Pruet testified that the testator told him either late in 1942 or early in 1943 that he either had made a will or was going to make a will (the witness did not remember which) and that his sister and brother had said he had been mean to his family or his family had been mean to him and he would leave his property to his sister and brother who would take care of his mother. Estelline Thornburg, a sister-in-law of the testator, testified that the testator told her on January 4, 1948, that he had made a will in favor of his mother but he was going to change it or had changed it. Marie Thornburg, wife of appellant Orvil Lee Thornburg, Jr., testified that in the spring of 1947 she heard the testator tell her husband to tell the younger children that "he knew they had worked hard for it and had helped him make it and that he wanted to make retribution for the way he had treated them earlier."

The question for us to determine is whether or not sufficient evidence was presented to the trial court to require the submission of the issue of undue influence as pleaded by appellants. A careful examination of the evidence reveals that all of the evidence heard that may have had any bearing on the issue of undue influence as pleaded here were declarations made by the testator to the various witnesses after the will in question had been executed, unless the declarations of the testator made to the witness, A. D. Pruet, were made before the will was executed. Pruet could not remember just when such declarations were made to him. The declarations of the testator given by the witnesses heretofore recited may have been properly admitted as evidence having some bearing on the issue of testamentary capacity of the testator but such declarations alone could not be properly admitted and heard as evidence on the issue of undue influence as pleaded, regardless of when such declarations may have been made to the witnesses. Before the declarations of the testator can be admitted to establish or have any bearing on the issue of undue influence in a case such as this, there must have been independent proof offered and evidence of probative force exclusive of such declarations must have been offered. The record reveals no such proof or evidence offered in this case. When the evidence heard in this case on the issue of undue influence is stripped of the declarations of the testator, which cannot be considered as original evidence to prove undue influence, nothing is left other than the showing of an opportunity to have exerted undue influence upon the testator at some time before the will was made, which alone is insufficient to meet the requirements of the law in such cases. Shofner v. Shofner, Tex.Civ.App., 105 S.W.2d 418; Hulme v. Jaschke, Tex.Civ.App., 168 S.W.2d 326; Burgess v. Sylvester, Tex. Civ.App., 177 S.W.2d 271, affirmed 143 Tex. 25, 182 S.W.2d 358; Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138.

At any rate, in order to have the issue of undue influence submitted to the jury, appellants were charged with the burden of offering competent evidence of probative force raising such issue and establishing at least a probability that the alleged parties did or said something to sway the testator's mind or influence his actions unduly at the time the will was made which acts or conduct of the alleged parties caused the testator to make such a disposition of his property as he would not have otherwise made. The alleged acts or conduct of the parties that constituted or exerted undue influence must have been in operation at the time the will was made and the making of the will must have resulted therefrom. Cloudt v. Hutcherson, Tex.Civ.App., 175 S.W.2d 643, and Rounds v. Coleman, Tex.Civ.App., 189 S.W. 1086. It has been held that influence is not undue influence in a contested will case such as this unless the free agency of the testator has been destroyed, and a will produced that the testator did not desire to make. Olds v. Traylor, Tex.Civ.App., 180 S.W.2d 511. The record reveals that the testator was a man of affairs and transacted much business; that he had discussed with Mr. Underwood the matter of making his will on several occasions before such was made; that he went unaccompanied to Mr. Underwood's office where his will was prepared according to his own instructions and executed in the presence of disinterested witnesses. There is no evidence that either Marie Manskey or Guy Thornburg knew of the existence of the will or its contents until a copy of the same was delivered to them by the testator after it had been executed. The rule has been well established that the issue of undue influence is not raised unless the record contains some admissible evidence of probative force that such influence was exercised, and that it subverted and overpowered the will of testator and caused the execution by him of a will which he would not have executed but for such influence. Olds v. Traylor, supra, and other authorities there cited. It is our opinion that there was no competent evidence of probative force offered in this case raising the issue of undue influence and that the trial court properly refused to submit such issue to the jury. Appellants' points to the contrary are therefore overruled.

Appellants complain that the trial court erred in excluding from the jury the testimony of Estelline Thornburg to the effect that she heard appellee, Marie Manskey, a beneficiary under the testator's will, make the statement in August of 1947 at Shattuck, Oklahoma that she (Marie Manskey) had told the testator that he had already provided enough for his children. At the time such testimony was offered, appellees' counsel objected to the admission of the same on the grounds that it was "hearsay" and that it could be offered only for impeachment purposes after a proper predicate had been laid and that no such had been laid. The trial court sustained the objections and approved appellants' Bill of Exception No. 2 setting out the proceedings had. The record does not disclose when Marie Manskey made such a statement to the testator, if at all. If such a statement was made to the testator by the said beneficiary, it could not have had any bearing on the issue of undue influence unless satisfactory proof had been offered that such a statement was made to him by the beneficiary at sometime before or at the time the will was executed on December 23, 1942. Appellants do not attempt to show when such a statement was made to the testator or how the offered testimony could have been material to any issue unless it could have been material to the issue of undue influence. It is our opinion for the reasons heretofore stated that the testimony was not erroneously excluded. However, if the testimony was admissible for any purpose, it was no more than a harmless error to exclude it. It is our opinion that, if the testimony had been admitted, it could not have changed the verdict of the jury on the issues submitted. Appellants' complaints should therefore be overruled. Hartfield v. Greber, Tex.Civ.App., 160 S.W. 603, affirmed Tex.Com.App., 207 S.W. 85.

Appellants next contend that appellees' attorneys were guilty of misconduct and improper argument made before the jury

by reason of which reversible errors were committed. In Bills of Exceptions Numbers 3 and 7 approved by the trial court appellants complain in two separate points about the alleged misconduct and improper argument of appellees' counsel. They brief the two points together and they will be so considered by us. In considering Bill of Exception No. 3, the record reveals that during the cross-examination of appellants' witness, A. D. Pruet, by appellees' counsel the witness had testified about a certain conversation he had with Orvil Lee Thornburg during his lifetime about the will in question. The witness said the conversation was had late in 1942 or early in 1943. He further testified that he gave the same testimony at a former hearing of this case. When asked by appellees' counsel to point out such testimony in a transcript of his former testimony, counsel for appellants conceded that the witness did not give such testimony at the former hearing after which the witness himself admitted that he probably told appellants' counsel about such conversation after the first hearing was had. Appellees' counsel then propounded the following question to the witness, "You didn't tell him (appellants' counsel) about what Mr. Thornburg said about his brother and sister forcing him to make a will?" Whereupon appellants' counsel objected and one of appellees' counsel said, "This is cross-examination—without counsel enlightening the witness as to how he might answer questions." Appellants' counsel then asserted that such was improper cross-examination since the question placed an improper construction upon the former testimony of the witness who had not testified that the testator had told him that his brother and sister had "forced" him to make a will and that the information sought from the witness was irrelevant and immaterial anyway. Appellees' counsel then made the following statement:

"Let me put it like this: You can change the question. We object to counsel enlightening the witness. This witness, I think, would swear one thing just as quickly as he would another, and when he gets a cue from counsel telling him what to swear to, it informs him how to answer questions, and I don't think counsel has any right to interrupt him. It is true he (referring to the witness Pruet) didn't use the actual word 'forced', but it amounts to the same thing, and I think it is legitimate cross-examination."

Whereupon the trial court overruled the objections made by appellants' counsel to the question propounded to the witness but at the request of appellants' counsel the trial court instructed the jury not to consider the statement made by appellees' counsel. Appellants reserved a bill notwithstanding the court's instructions and they contend that the statement made in the presence and hearing of the jury was so prejudicial that an instruction by the trial court did not cure the injury done. Appellees contend that the statement was made to the trial court and not to the jury; that it was merely an exchange of remarks between opposing counsel before the trial court and could not have impressed the jury as being anything else; that the statement was justified in view of the previous contradictory testimony given by the witness Pruet; and finally, that if the statement made was error, it was a harmless error in view of the instructions given to the jury by the court not to consider such a statement.

In appellants' Bill of Exception No. 7 they complained that the following statement was made by appellees' counsel in the opening argument to the jury and that such constituted a reversible error:

"Now, Gentlemen, somebody, of course, is lying in this case, and lying deliberately. It is unfortunate that that thing happens to come about. I don't believe it is the twenty-two witnesses, the best men we could find in Carson County, that have misstated these facts."

Whereupon appellants' counsel objected and charged that appellees' counsel was giving testimony himself before the jury. Appellees' counsel then answered the objection with the following statement:

"No, sir, I stated it as only my opinion, as it must be from my opinion. I am not testifying as a fact. I am simply trying to reach the conclusion that it is inevitable, I think, to your mind or my mind that all

of this testimony can't be frank, truthful and honest." The trial court overruled the objections and the argument proceeded.

In connection with the last complaint made, it may be observed that thirty-four witnesses had testified in the case. Some of appellants' witnesses had testified that the testator, Orvil Lee Thornburg, deceased, was a man of uncontrollable temper and had exhibited such extreme anger on some occasions that they believed him to be insane. Some twenty-two witnesses from the various walks of life had testified that they had known the testator during his lifetime, had engaged in business transactions with him and believed him to be sane. In addition to the testimony given by the witness Pruet, heretofore referred to, the witness Buck Seitz testified for appellants that he was 43 years of age and had known the testator well from about 1919 until his death and that he had worked for him the biggest part of the time for sixteen years. He testified that he saw him and talked with him last late in 1945 or early in 1946. He further testified about his observations of the testator and about various incidents in the life and actions of testator that led him to believe that testator was insane. Seitz testified that during the whole time he worked for testator he thought he was insane and that he thought the testator was insane from the time he began working for him until he saw him last. He further testified that during the sixteen years he worked for the testator he never saw him transact any business; that he never saw him plant a wheat crop or shear any sheep or make any kind of a business transaction. Under further cross-examination the witness admitted that he had sworn at a former hearing that during 1935 the testator was engaged in farming and ranching. He testified at this trial that he did not think the testator had sense enough during the sixteen years the witness worked for him to know when to harvest the wheat or when to work the cattle. His testimony was contradicted by the twenty-two witnesses for appellees. Among these witnesses was a banker, a stock farmer, a grain dealer, a public official and men of other professions, all

of whom testified, in effect, that they were well acquainted with the testator during his lifetime, had business dealings with him, knew him to be a shrewd business man who transacted considerable business, increased the value of his estate and that he was of sound mind.

The rule has been well established that counsel has a legal right to draw logical deductions from the testimony and circumstances in the case in making an argument to the jury. A rather wide range is always allowed counsel in making arguments before juries so long as they confine themselves to deductions, discussions and explanations or interpretations of the testimony heard. Massie v. City of Floydada, Tex.Civ.App., 112 S. W.2d 243, and authorities there cited. It has likewise been held that fair criticism of a witness and his testimony, when justified by the record, is not objectionable. Columbus Mut. Life Ins. Co. v. Oldham, Tex.Civ.App., 115 S.W.2d 694. It will be remembered that the argument made before the jury was objected to only on the grounds that such amounted to testimony being given by counsel. It is our opinion that appellees' counsel made it clear that such was his opinion or his deduction made from the conflicting testimony heretofore mentioned. It will be noted that counsel did not call the name of any witness in his argument. Under the record and authorities cited it is our opinion that counsel's statement was no more than a reasonable deduction made concerning the conflicting evidence. Appellees' counsel might have observed the rules of propriety a little better if he had used a milder or a less offensive expression in expressing his opinion but when he said "Somebody is lying in this case", he could not have used an expression that would have been any better understood.

In considering the complaint made about the conduct of appellees' counsel in Bill of Exception No. 3, the trial court's instruction to the jury not to consider the statement made by appellees' counsel must have relieved the proceedings there had of any probable error. It must be presumed that the jurors obeyed

the instructions of the trial court in their deliberations and that they were not improperly influenced by the conduct or remark of appellees' counsel addressed to the court. Davis v. Hill, Tex.Com.App., 298 S.W. 526. The last case cited also approves the rule to the effect that matters such as appellants have here complained about in both of their Bills of Exception are addressed to the sound discretion of the trial court and appellate courts will not disturb its decision unless it appears that the trial court has abused its discretion. In support of such a rule we also cite Patterson v. Fuller, Tex.Civ.App., 110 S.W.2d 1230, and numerous authorities there cited. The trial court directed that a complete transcript of the argument of appellants' counsel, Mr. E. A. Simpson, be filed with the record and such is therein contained. The record reveals that the conduct and the remarks of appellees' counsel, about which appellants here complain, were ably answered in kind by the argument of appellants' counsel who freely used the harsh words of "lies, lying, liars and perjurer" but he did not charge any witness of misrepresentation.

For the reasons given it is our opinion that the conduct and argument of appellees' counsel did not constitute prejudicial or reversible error and that appellants' complaints to the contrary presented in their Bills of Exception Nos. 3 and 7 are therefore overruled.

In their Bill of Exception No. 4 appellants complain that the closing argument of appellees' counsel before the jury constituted reversible error when counsel stated that the testator, Orvil Lee Thornburg, was "not to be condemned when he said 'I am not going to leave any part of the property to the children,' and indirectly, of course, to the woman (meaning Alma Thornburg, his former wife and the mother of the children)." Appellants' counsel objected to the statement "and indirectly to the mother of these children" on the grounds that the said statement was not supported by the evidence and was not a reasonable deduction to be drawn from the evidence since Alma Thornburg was not a party to this suit directly or indirectly

except in the capacity as natural guardian for her minor children. Whereupon appellees' counsel further stated to the jury:

"It is shown, Gentlemen of the Jury, that this good lady comes in here as natural guardian of these children who are seeking to obtain this property. That is the basis of my statement of indirect benefit, and, or course, you know, as a practical thing, that she will be benefited if this will is broken."

Appellants' counsel further objected to the latter statement. The trial court overruled the objections and approved a lengthy Bill of Exception with some explanations and reservations therein expressed. Appellees contend that the statements made in the argument were reasonable deductions to be drawn from the evidence heard; that the argument was in reply to the previous argument made by appellants' counsel; and that it could not have had any bearing on the only controverted issue submitted to the jury—that of the testamentary capacity of Orvil Lee Thornburg.

It has been held that the possibility of injury from such argument must be determined by its relation to the entire case since cases differ so widely in their facts that precedents are of little value. Commercial Standard Ins. Co. v. Shudde, Tex.Civ.App., 76 S.W.2d 561, and Moore v. Parrish, Tex.Civ.App., 70 S.W.2d 315. In this case the interest of Alma Thornburg as mother of all of the children and as natural guardian and next friend of the minor children was made known to the jury throughout the trial from the time the pleadings were read. Alma Thornburg's testimony reveals that she protested to the testator the fact that he had made a will without leaving any part of his estate to the children and she asked the testator why he did it. Appellants' counsel had previously argued this testimony before the jury in language as follows:

"And Orvil said what? What am I getting up to? 'Alma, I made an awful mistake about two years ago. I signed this will and willed all my property to Guy and Marie, asking them to take care of mother. I didn't give my children a

penny.' And this mother (referring to Alma Thornburg), who had been with him when the children were conceived, who had lived with him during the nine months that she went through the agonies of pregnancy, who probably had him at her bedside when they were born, knowing that they had a natural claim upon him, knowing that the God of Nature said the children ought to have the property, she said, 'Orvil, who on earth—why did you cut your children out'."

In his argument appellants' counsel also made reference to the fact that he was representing this mother as natural guardian of the children. Under the authorities heretofore cited it is our opinion that the argument of appellees' counsel was a reasonable deduction made from the evidence heard. It is our opinion further that the argument of appellees' counsel was justified as a reply to the argument of appellants' counsel previously herein given. The only contested issue submitted to the jury was that of testamentary capacity of the testator. Appellants' do not challenge the sufficiency of the evidence to support the jury's findings on that issue.. The argument in question could have had little, if any, bearing on the issue of testamentary capacity and certainly would not have changed the result. It is our opinion that the argument of appellees' counsel was not improper but that such could not have been anything more than a harmless error if it was improper. Appellants' point to the contrary is overruled.

■ Appellants complain in their Bill of Exception No. 5 about the closing argument of appellees' counsel in which mention was made of the offer by appellees of the testimony of Marie Manskey but her testimony was not available because of a rule of law that sealed her lips when death sealed the lips of the testator. Appellants objected and the trial court sustained the exception and stated that the argument was subject to the objection. Appellees' counsel further stated, in effect, that he was merely explaining why Marie Manskey had not taken the stand and denied the testimony given by several witnesses charging her (Marie Manskey)

of having made certain declarations and he tendered her testimony for that purpose and he made it clear that it was not for the purpose of violating the "dead man's statute". Again appellants' counsel objected and the court sustained the objection. Appellants' counsel asked the court to instruct the jury not to consider counsel's argument and the trial court said "I think sustaining it is sufficient. The jury will understand the situation."

The record reveals that Marie Manskey was called to the stand as a witness for the purpose of having her identify certain handwriting of the testator. It was agreed by stipulation that the handwriting was that of the testator and the witness was excused from the stand without giving testimony. Appellees contend that the witnesses Alma Thornburg, Buck Seitz and A. D. Pruet gave testimony concerning statements Marie Manskey was charged of having made and that appellants' counsel had discussed the said testimony of the said witnesses in his previous argument when he said:

"Was it his own rational brain that cut out the children? Or was it the heart, while it was sound, to cut them out? Or was it the influence of his sister, Marie? Hounding and pounding, saying, 'Your children have double-crossed you. They have been mean to you. They've got all they ought to have. Cut them out, cut them out'."

Appellees contend that their argument was proper and that their offer of the said witness for the said purpose was proper but the trial court sustained appellants' objections and did not agree with them. It is our opinion that the matters in controversy here could have had little, if any, bearing on the issue of testamentary capacity, the only controverted issue submitted to the jury and certainly would not have changed the result. If any error was committed it was corrected by the action of the trial court in the presence and hearing of the jury, which must have been composed of men of average intelligence who observed and understood the language and effect of the statements made by the trial court. The complaints made

by appellants in their fifth Bill of Exception are overruled.

Appellants further complain about the closing argument of appellees' counsel in their Bill of Exception No. 6. The argument complained of stated:

"He (referring to the deceased testator) may have intended to change his will. He may have changed his will, and, mind you, gentlemen, if he has made another will later than this—if he has made another will later than this and changed it and that will is discovered any time within four years and brought in this court house, it will be probated unless these folks here get on the witness stand and continue to testify that he is crazy."

To such argument appellants' counsel made the following objections:

"To that argument we except and object as being beyond the record in this case, not embraced in any issue in this case, not embraced within the pleadings, amounting to an attorney giving independent testimony of facts and not the law, and is an independent statement of his own conclusion of the law. It is wholly irrelevant and immaterial and illegally prejudicial to the rights of the defendant."

The trial court overruled the objection. Appellees' counsel further stated:

"Yes, yes, of course, if that will should happen to favor these children that are contesting this, now what shape are they going to be in?" Appellants' counsel further objected and the same was overruled by the trial court.

Appellants offered the testimony of a number of witnesses who said Orvil Lee Thornburg, the testator, had told them he was going to make a new will or had made a new will and appellants' counsel had previously argued at least a part of such testimony before the jury. It is therefore our opinion that the appellees' argument was justified both under the evidence and in reply to argument previously made by appellants' counsel. However, it is our opinion further that the controversy here presented could have little, if any, bearing on the issue of testamentary capacity the only controverted issue submitted to the jury and certainly could not have changed the result. We further believe that the argument was not prejudicial or harmful to appellants. Appellants' complaints to the contrary are overruled.

We have carefully examined the record in this case and the briefs filed. We have failed to find any reversible error therein contained. All of appellants' points of error are overruled and the judgment of the trial court is affirmed.